IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


ALRP PROPERTY, LLC               )
                                 )
            Plaintiff,           )
                                 )
       v.                        )    Civil Action No. 11-134
                                 )
BOROUGH OF TARENTUM and          )
WILLIAM ROSSEY                   )
                                 )
            Defendants.          )


MEMORANDUM OPINION

Mitchell, J.

        Presently before the Court is Defendants', Borough of
Tarentum's ("Tarentum" or "borough") and William Rossey's
("Rossey") motion to dismiss the amended complaint (Doc. # 11)
filed by the Plaintiff, ALRP Property, LLC ("ALRP").  For the
reasons that follow, the motion will be granted in part and
denied in part.

II. Report

    A.  Factual and Procedural History

        ALRP filed this 42 U.S.C. § 1983 action claiming that
Tarentum and/or Rossey violated its Fourteenth Amendment equal
protection and substantive and procedural due process rights
when they interfered with and then destroyed its possession and

use interest in a property located at 203 East Fifth Avenue in Tarentum, Pennsylvania. The subject property includes a building and a plot of land. The building was constructed in approximately 1907. Six months after it was built, the building tilted and, since that time, it has leaned to one side.

In 1993, the property was purchased by Joseph and Darlene McGough. In 1996, in response to an inquiry from Tarentum concerning the safety of the building, the McGoughs submitted a letter from David Petrak (the "Petrak report"), a structural engineer, that concluded that the building was sound. On May 15, 1996, the borough solicitor acknowledged receipt of Petrak's letter and informed the McGoughs that they had satisfied the concerns regarding the structural integrity of the building. The solicitor also advised that the Petrak report would be maintained in a file and disclaimed any responsibility of the borough for any liability arising from a structural failure of the building.

In 1999, Tarentum Laundromat Cleaners ("TLC") purchased the building. According to the amended complaint, Glen Hunkele, the president of TLC, filed a copy of the Petrak report with Tarentum which the borough acknowledged as sufficient to support the issuance of a building permit. The complaint further avers that, at this time, Tarentum declared that any subsequent purchaser of the property must be provided

with a copy of the Petrak report prior to the transfer of ownership.

ALRP purchased the building in August 2008. The first floor housed a Laundromat and the second floor included two Section 8-eligible apartments, one of which was occupied. After the closing, a Tarentum building inspector informed ALRP that it must secure an engineering report concerning the soundness of the building. Based upon the building inspector's position, ALRP did not receive an occupancy permit or reopen the Laundromat. The borough representative did not inform ALRP about the existence of the Petrak report.

After its discussion with the Tarentum building inspector, ALRP became concerned that the prior owners misrepresented the trustworthiness of the building. It thus filed a complaint against the sellers in the Court of Common Pleas of Allegheny County where the matter was referred to arbitration. In the meantime, the condition of the building deteriorated.

On February 4, 2009, the Tarentum building inspector sent a notice to ALRP declaring that the building was an "Unsafe Structure" and "unfit for human occupancy" based upon the building's non-compliance with Tarentum's Ordinance "04-09, as amended." Am. Compl., Ex 4. The letter informed ALRP that recent inspections revealed a number of violations of the Code,

including, the visible lean of the building, a separation in the stairs, large holes in the ceiling, and water-soaked floor joists, timbers, and beams. It was also noted that the structure showed a lack of maintenance and repair. Tarentum instructed ALRP that it had twenty days from the date of the notice to bring the building into compliance with the Code or to submit a plan detailing demolition of the structure. It further informed that failure to comply with the notice could result in legal action and the imposition of a $600 fine per day of violation and that ALRP could appeal within twenty days. According to ALRP, it did not pursue an appeal because it was still in litigation with the sellers and remained unaware of the Petrak report that supposedly attested to the structural integrity of the building.

Later in the winter of 2009, ALRP and Tarentum met to discuss ALRP's options with regard to the building. Tarentum officials recommended demolition of the building and encouraged ALRP to engage a particular company to perform the demolition. At this same meeting, ALRP inquired about the history of the building and whether the Borough possessed any paperwork referring to the structure. While Tarentum produced some documentation, it did not disclose the Petrak report or other documents related to the building.

ALRP decided to postpone making the required

renovations to the building until a decision was reached in the pending arbitration between it and the sellers. As that proceeding was nearing its conclusion, Tarentum provided ALRP with the Petrak report. Shortly thereafter, the borough initiated legal proceedings with the local district magistrate due to ALRP's failure to bring the building into compliance with the local ordinance. At this point, ALRP advised the borough that it was willing to make the repairs listed in the February 4, 2009 citation, but, relying on the Petrak report's attestation to the structural soundness of the structure, asserted that it would not demolish the structure. The borough responded that it no longer accepted that premise of the Petrak report. It also informed ALRP that if it challenged Tarentum's determination that the structure was unsound, the borough would engage its own engineer to assess the integrity of the building. A hearing on the citations was postponed while the parties attempted to negotiate the future of the building, however, the borough represented that it would not agree to anything short of demolition of the building. The citation was eventually resolved by ALRP agreeing to be found guilty of one instance of failure to remove the building on the condition that Tarentum would not issue further citations.

ALRP then learned that the borough intended to develop green space near the building and believed that the borough

wanted the building demolished so that the resulting vacant lot could be incorporated into the green space. At this point, ALRP offered to deed the property to Tarentum if the borough would bear the expense of the demolition or allow the borough to assert a lien against the property for the expense. The borough declined the offer, but agreed to research acquiring a grant to take down the building. Although only a government entity could apply for the grant funds, ALRP agreed to do the groundwork for the grant application.

In November and December 2009, ALRP performed all the legwork within its power to facilitate the grant process and waited for information from the borough concerning the progress of the application. In January 2010, ALRP questioned Rossey on the status of the grant application. Rossey responded that the application had been denied; in fact, though, the borough never submitted the application. Rossey also warned ALRP that it would face daily citations until the building was demolished. Rossey then informed the press that the reason the grant money was not secured was because there was no grant money available.

A few days after the conversation between ALRP and Rossey, ALRP was contacted by a relative of Rossey's, Jeffrey Steihler, the owner of a neighboring property. Steihler expressed interest in acquiring the subject property from ALRP for no consideration in exchange for his assumption of

responsibility for the building. The offer was contingent on Steihler's being allowed to enter the building with a contractor or engineer to assess the potential costs of rectifying the problems with the building. According to the complaint, Steihler intimated that he could influence the borough to overturn its condemnation decision.

The dialogue between ALRP and Steihler continued through April 2010 while the building continued to deteriorate. Tarentum issued several new citations for failure to rectify an unsafe structure. Following a hearing on the charges, ALRP was found guilty and a fine was imposed.

On February 2, 2011, ALRP filed a 42 U.S.C. $ 1983 action, alleging violations of its Fourteenth Amendment equal protection and due process rights. After the defendants filed a motion to dismiss, ALRP was granted leave of court to file an amended complaint. In count one of its amended pleading, ALRP claims that Tarentum and Rossey intentionally treated it differently from both the prior owners of the subject property and from similarly situated owners of other properties without reason. Because of this disparate treatment, ALRP claims that it was deprived of equal protection of the law in violation of the Fourteenth Amendment.

Count two of the amended complaint charges that Tarentum and/or Rossey violated ALRP's substantive and

procedural due process rights when they interfered with and eventually destroyed ALRP's possession and use of the subject property.

On July 7, 2011, the defendants filed a motion to dismiss the amended complaint arguing that: 1) the section 1983 clams are barred under the Heck v. Humphrey rule; 2) the allegations of the complaint do not demonstrate that ALRP was treated differently from prior property owners; 3) ALRP was given adequate notice regarding the subject building's violations; 4) ALRP was not similarly situated to the other property owners; 5) ALRP's procedural due process claim fails because it did not avail itself of the available process; 6) ALRP's substantive due process claim is deficient as it fails to demonstrate "shock the conscience" behavior by the defendants; and, 6) Rossey is entitled to qualified immunity.

B. Standard of Review

The United States Supreme Court opinions in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and, more recently, in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), have shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. With the Supreme Court instruction in mind, the Court of Appeals for the Third Circuit has outlined a two-part analysis that

courts should utilize when deciding a motion to dismiss for failure to state a claim. First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." Iqbal, 129 S. Ct. at 1950. That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

  C. Discussion

    1. Equal Protection Claim

      a. Application of Heck v. Humphrey

  In Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court held that where a favorable outcome in a Section 1983 action would implicitly call into question the validity of a conviction, the plaintiff must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. A court considering a defense challenge

under _Heck_ must determine if "a judgment in favor of the plaintiff would necessarily imply the invalidation of his conviction." _Id_.

Here, ALRP pled guilty to one count of failing to remove the building and was found guilty following a hearing for failure to rectify the notice of unsafe structure. The defendants argue that ALRP's equal protection claims, premised on the allegations that previous property owners were granted occupancy permits based upon the Petrak report, that similarly situated property owners were served with notices of condemnation and were not fined, and that similarly situated property owners were not required to bear the cost of demolishing the structures on their properties, call into question the validity of its criminal convictions and are thereby barred under the Heck v. Humphrey rule.

The Court finds, however, that the connection between ALRP's criminal convictions and its claim of equal protection deprivation is too attenuated to apply the _Heck_ rule. First, the underlying basis for both convictions implicated the borough's determination that the building was unsafe. The decision was premised on a number of factors, including, but certainly not limited to, the tilt of the structure. Thus, even if ALRP would prevail in its claim that the borough should have accepted the Petrak report as evidence of the building's

soundness as it had with prior property owners, that acceptance, in and of itself, would not mean that the borough erroneously declared the building unsafe and, thus, would not call into question the validity of ALRP's convictions. Additionally, ALRP's other equal protection assertions, that similarly situated property owners were properly served with notices of condemnation and were not fined and that the borough paid for and/or obtained funding to demolish their properties, actually imply a concession by ALRP, consistent with its conviction and guilty plea, that its building was unsafe.

Therefore, the defendants' motion to dismiss based upon the Heck v. Humphrey bar will be denied.

b. The Occupancy Permit

ALRP argues that its rights under the equal protection clause were violated when the borough refused to issue it an occupancy permit when it purchased the building. By this claim, ALRP invokes the "class of one" theory, i.e., that it "was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). To state a cognizable equal protection class of one theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational

basis for the difference in treatment." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006).

According to the complaint, in 1996, the then-owners of the subject property secured the Petrak report to address the borough's concerns about the safety of the building. On May 15, 1996, the borough solicitor informed the owners that the report satisfied the borough's trepidations. Am. Compl., Ex.2. In 1999, when the building was sold to Tarentum Laundromat Cleaners, the borough again deemed the Petrak report sufficient to support the issuance of an occupancy permit. When ALRP purchased the property nine years later, the borough inspected the building to determine whether an occupancy permit should issue as required by local ordinance[1]. After the inspection, the borough informed ALRP that it would have to acquire an engineering report attesting to the soundness of the building. When ALRP did not produce a report, the borough refused to grant an occupancy permit.

ALRP argues that the borough lacked any reasonable basis for declining the issuance of an occupancy permit when it

---

[1] "No permit for occupancy shall be issued to residential, commercial and industrial establishments until such time as the premises have been approved by the Building Inspector, Code Enforcement Officer, Zoning Officer, Fire Marshal and/or other such person as the Council of the Borough may require . . . ." Tarentum Borough Ordinance 2075, Chapter 197, § 197-3. Reply Br., Ex. A.

had granted previous owners similar permits based upon the Petrak report. It also complains that, in the nine years that preceded its purchase of the building, the borough did not re-inspect the building, revoke the occupancy permit, or request an updated occupancy permit. ALRP contends that the borough's inaction prior to its ownership demonstrates that the borough's demand that ALRP produce a new report was arbitrary. Finally, ALRP claims that Jeffrey Steihler, Rossey's relative and the owner of a neighboring property, indicated that he would be able to secure an occupancy permit if ALRP would gratuitously deed the property to him. According to ALRP, these allegations support the inference that the defendants believed the building to be structurally sound, but, arbitrarily refused to issue it an occupancy permit.

ALRP's factual allegations are not sufficient to show entitlement to relief based upon the equal protection clause. First, ALRP has not shown that the borough acted unreasonably when it requested an updated engineering report, rather than accepting the 12-year old Petrak report, before it would issue the occupancy permit. Whether or not the stability of the building had actually changed, it was reasonable for the borough to request a more current analysis.

Second, ALRP has not shown disparate treatment. Although ALRP asserts that it was treated differently from prior

owners, in fact, by borough ordinance, all new owners must submit to a building inspection as a prerequisite to securing an occupancy permit. ALRP's protestations concerning the borough's inactivity in policing the safety of the building are likewise unavailing as it has not alleged that the prior property owners were subject to intermittent inspections.

Finally, ALRP's contention that Jeffrey Steihler's, avowal that he would be able to secure an occupancy permit demonstrates that the borough's decision to deny it the same was arbitrary, lacks the required factual predicate to state a claim. The inference that the borough would have treated Steihler differently is supported only by Steihler's unsupported statement; there is no allegation that the borough represented that it would have issued him an occupancy permit.

Thus, for the reasons above, ALRP has failed to plead plausible claim for relief that the borough's refusal to issue it an occupancy permit is an equal protection violation, and the motion to dismiss is granted as to this claim.

c. Failure to Condemn the Building

ALRP also alleges that it was treated differently from other similarly situated individuals because the borough failed to follow the proper procedures to condemn the building. In support, it attached a copy of the February 9, 2009 Notice of

Unsafe Structure it received from the borough and requests that it be compared to a Notice of Condemnation sent to another property owner whose buildings were deemed unfit for human occupancy. According to ALRP, the Notice of Unsafe Structure is inferior to the Notice of Condemnation in that it fails to specify the long term consequences of failing to comply with the notice and does not adequately inform the property owner of the rights associated with an appeal of the notice.

Initially, ALRP provides no legal basis for its underlying premise that that it should have been served with a Notice of Condemnation, rather than the Unsafe Structure Notice. Additionally, ALRP's complaint concerning the inadequacies of the Notice of Unsafe Structure, the failure to apprise of consequences for non-compliance and the failure to explain the property owner's appeal rights, is belied by the February 9, 2009 Notice itself. The Notice, sent by certified and first class mail, informed ALRP that an inspection of the building uncovered serious violations of the Building Code, and detailed the violations. The Notice informed ALRP that it had twenty days to submit a plan to bring the structure into compliance with the Code or a plan detailing demolition of the building. The owner was warned that failure to comply with the notice could result in legal action, assessment of a daily fine, and a

possible prison sentence and court costs. The penultimate paragraph notified ALRP of its right to appeal. Am. Compl., Ex. 4.

Accordingly, ALRP has not pled sufficient facts to support a claim that the borough's service of Notice of Unsafe Structure, as opposed to a Notice of Condemnation, resulted in a violation of equal protection rights and the motion to dismiss will be granted as to this claim.

d. <u>Issuance of Citations and Refusal to Finance or Obtain Grant Funding to Demolish Building</u>

ALRP also contends that it was treated differently from other similarly situated property owners because it was repeatedly cited and fined by the borough while eleven[2] other owners of other allegedly unsafe properties were neither cited nor fined. Similarly, ALRP claims that the borough refused to finance and/or acquire grant funding for its building's destruction, yet it funded the demolition of those same other property owners. The defendants' response to these two claims is identical - that the other property owners identified by ALRP are not similarly situated to the plaintiff because they were unknown by the borough.

When deciding a motion to dismiss, courts generally

---

[2] Paragraph 47 of the amended complaint actually lists ten, not eleven properties.

consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The court need not accept as true "unsupported conclusions and unwarranted inferences." Maio v. Aetna, Inc. 221 F.3d 472, 500 (3d Cir. 2000)(internal quotations omitted).

At the motion to dismiss stage, the well-pleaded factual allegations of the plaintiff are accepted as true. The defendant's assertions of fact, however, are not entitled to the same deference. For this reason, the court does not accept the borough's rejoinder to ALRP's disparate treatment argument that the other owners were unknown[3] and the motion to dismiss on this basis will be denied.

2. Due Process Claims

In count two of its complaint, ALRP claims that the defendants[4] violated its substantive and procedural due process

_____

[3]    The defendants claim that the plaintiff admits that that the property owners were unknown and cites the following language from paragraph 47 of the amended complaint in support – "The Borough also paid to demolish . . . 11 properties in the past three years, **without ever finding the owners**." (emphasis in original) Defs'. Brief at 15.    The defendants, however, misquote the amended complaint which actually reads "without **fining** the owners."    Am Compl. ¶ 47

[4] The wording of paragraph 66 of the amended complaint could be interpreted either as alleging a due process violation by Rossey only or by both Defendants. As

rights when they "improperly interfered with Plaintiff's rights to secure an occupancy permit and to use its property and, thereafter, improperly condemned Plaintiff's property." Am. Compl., ¶ 68.

Unlike the allegations reasoning ALRP's equal protection argument, the underlying basis for the due process claims implicate the legitimacy of ALRP's criminal convictions. If ALRP would prevail in its argument that its due process rights were violated because the defendants' actions resulted in a wrongful denial of an occupancy permit and an incorrect condemnation, its convictions for failure to remove the building and for failure to rectify the notice of unsafe structure would be invalid. Accordingly, ALRP's due process claims are barred by the Heck v. Humphrey rule and the motion to dismiss count two of the complaint will be granted.

4.  Qualified Immunity

Rossey argues that Plaintiff's claims against him should be dismissed because he is protected by qualified immunity. The doctrine of qualified immunity shields government officials performing discretionary functions from liability if their alleged conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person

the other paragraphs in these count state claims against both Defendants, the Court will assume that ALRP intended to level all the due process violation charges against all Defendants.

would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz,* 533 U.S. 194, 200 (2001) (internal quotations omitted).

Here, ALRP has alleged that Rossey was the decision-maker for the borough on the issues concerning its property and, as such, was involved in the judgment to deny it an occupancy permit, and was the moving force behind the issuance of multiple citations to ALRP. The plaintiff also claims that Rossey never followed through on applying for a grant to demolish the building, falsely told ALRP that the application was denied, and misrepresented to the press that the grant money was not secured because there were no funds available. ALRP contends that Rossey's actions were unreasonable, deceptive, and motivated by self-interest.

In *Saucier,* the Supreme Court directed that a defendant's entitlement to qualified immunity is determined by a two-step process. The court first decides whether the plaintiff has alleged facts demonstrating the violation of a constitutional right. If the plaintiff has satisfies this step, the court must then decide if the particular right at issue was clearly established at the time of the defendant's alleged misconduct. 533 U.S. at 201. The Supreme Court, however, has lately re-examined the *Saucier* inquiry and has eliminated the

requirement that the two steps be decided in sequential order. In <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009), the Court reviewed the Saucier protocol and decreed that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Id</u>. at 236; <u>See also</u> <u>Montanez v. Thompson</u>, 603 F.3d 243, 250 (3d Cir. 2010). Whether ALRP has adequately pled facts showing that its constitutional rights have been infringed has already been analyzed, thus, a traditional <u>Saucier</u> inquiry is appropriate here.

It has been determined that ALRP has alleged sufficient facts to support the equal protection claim that it was treated differently from similarly situated property owners when it was repeatedly fined and denied financial assistance in demolishing its building. It has also claimed that Rossey was the person responsible for the disparate treatment accorded it. It then remains to be decided whether this right was clearly established at the time of Rossey's complained-of machinations.

The Supreme Court has observed:

For a constitutional right to be clearly
established, its contours must be
sufficiently clear that a reasonable
official would understand that what he is
doing violates that right. This is not to

20

> say that an official action is protected
> by qualified immunity unless the very
> action in question has previously been
> held unlawful; but it is to say that in
> the length of preexisting law the
> unlawfulness must be apparent.

Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotations and citations omitted).

To determine the reasonableness of an official's belief that his conduct was legal, the inquiry is "`whether a reasonable person could have believed the defendant's actions to be lawful in light of clearly established law and the information [s]he possessed.'" Kornegay v. Cottingham, 120 F.3d 392, 395-96 (3d Cir. 1997) (quoting Parkhurst v. Trapp, 77 F.3d 707, 712 (3d Cir. 1996)).

Accepting ALRP's allegations that Rossey's self-interested maneuverings resulted in it receiving disparate treatment, it cannot be said that a reasonable person would believe that his actions were lawful under the clearly established right to equal protection. Therefore, at this stage in the proceedings, Rossey's motion to dismiss on qualified immunity grounds is denied.

For the reasons stated, the defendants' motion to dismiss the amended complaint (Doc. # 11) will be granted in part and denied in part.

An appropriate order follows.

Dated: October 18, 2011          s/Robert C. Mitchell
                                 Robert C. Mitchell
                                 U.S. Magistrate Judge